J-A01011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| E.A.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.M.D. III | |
| Appellant | No. 515 WDA 2016 |

Appeal from the Order Entered March 10, 2016
In the Court of Common Pleas of Butler County
Civil Division at No(s): MSD 16-40020

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 27, 2017**

A.M.D. III appeals from the March 10, 2016 final protection order entered pursuant to the Protection of Victims of Sexual Violence or Intimidation Act ("PVSVIA"), 42 Pa.C.S. §§ 62A01-62A20.  The petition was filed by E.A.M. ("Petitioner") on behalf of her minor daughter, M.M.[1]  We affirm.

On April 1, 2015, Appellant, then age seventeen, and M.M., age sixteen, had a sexual encounter outside of M.M.'s automobile while returning from a youth meeting at First Baptist Christian School in Butler, Pennsylvania.  The parties dispute whether the encounter was consensual.  M.M. described the episode as follows.  During the trip home, Appellant

_____

[1] In order to protect the identity of the minor victim, we redacted the names of the parties and altered the caption accordingly.

_____

*  Retired Senior Judge assigned to the Superior Court.

directed her to detour onto a country road, pull the car to the berm, turn off the engine, and exit the vehicle. Once M.M. was out of the car, Appellant instructed her to get on her knees and perform fellatio. The ordeal lasted approximately thirty minutes, and ended when Appellant ejaculated in M.M.'s mouth. Thereafter, the pair returned to the vehicle, where Appellant placed his hand on top of M.M.'s and directed M.M. to rub his penis while he kissed her breasts.

On April 23, 2015, M.M. reported the incident to the Pennsylvania State Police, who, following an investigation, filed a juvenile delinquency petition alleging that Appellant's role in the encounter was conduct that would constitute indecent assault if performed by an adult.[2] Following the ensuing adjudicatory hearing, the juvenile court found that Appellant did not commit the delinquent act alleged in the petition, and it dismissed the petition. Specifically, as it relates to the primary issue in this appeal, the juvenile court subsequently explained that its "finding was based upon the fact that [it] found that sex had happened between the parties, that it was without the consent of the victim, but that [the lack of] consent had not been sufficiently communicated for [it] to find [Appellant] guilty beyond a reasonable doubt." N.T., 3/10/16, at 27.

_____

[2] The relevant subsection of indecent assault applies where a person causes the complainant to have indecent contact with him or her without the complainant's consent. 18 Pa.C.S. § 3126(a)(1).

On January 27, 2016, Petitioner filed a petition on her daughter's behalf pursuant to the PVSVIA. The petition alleged that Appellant, who is no longer enrolled at First Baptist Christian School, appears at school events, stares at M.M., and tries to speak with her. Although M.M. informed school administrators that Appellant's presence at school activities made her feel unsafe, the administration declined to address the situation because Appellant's mother taught at the school. Instead, they continued to endorse Appellant's presence.

The trial court granted a temporary protection order, and on March 10, 2016, following a continuance and an evidentiary hearing, the court entered a final protection order prohibiting Appellant from engaging in any form of contact with M.M. for three years. This timely appeal followed.[3] Appellant complied with the trial court's order directing him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court's ensuing Rule 1925(a) opinion relied upon the underlying order and the certified record.[4]

_____

[3] As the last day of the appeal period fell on Saturday, April 9, 2016, Appellant had until the first business day to file the appeal. **See** 1 Pa.C.S. § 1908 ("Computation of time").

[4] We disapprove of the trial court's reliance upon its underlying order in lieu of a developed trial court opinion that addressed all five of the issues that Appellant asserted in his statement of errors complained of on appeal. While Pa.R.A.P. 1925(a) alleviates the need for a trial court opinion when the
*(Footnote Continued Next Page)*

Appellant presents three claims for our review:

1. The [trial] [c]ourt erred in entering a final [p]rotection [o]rder by reason that [M.M.] did not meet the burden provided in Section 42 Pa.C.S.A. § 62A06, and [the] court applied the wrong standard of proof.

2. The [trial] [c]ourt erred in entering the [p]rotection [o]rder in that there was neither evidence set forth by [M.M] proving that she was at a continued risk of harm by [Appellant] nor evidence of any harm suffered by her.

3. The [trial] [c]ourt failed to consider actions of the alleged victim following the imposition of the [p]rotection [o]rder, i.e., trying to "friend" [Appellant's] mother on Facebook, which shows by [M.M.'s] own action that a [p]rotection [o]rder was being pursued in bad faith.

Appellant's brief at 4.

At the outset, we observe that Appellant's third issue is waived because it was not raised before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). This claim is predicated upon M.M.'s alleged post-hearing attempt to communicate with Appellant's mother on social media. However, Appellant did not level this claim in a motion for reconsideration or any other petition for relief. Even accepting Appellant's statements that he notified the trial court of the issue in a letter mailed to

*(Footnote Continued)* ─────────────

reasons for the order appear of record, that is not this case. Instantly, by relying upon its underlying order, the trial court failed to address Appellant's specific allegations of error. If we permitted judges to do routinely what the trial court did here, it would render Rule 1925 meaningless.

- 4 -

the court and opposing counsel, that correspondence is not included in the certified record and therefore does not exist for purposes of appellate review. *Commonwealth v. Boyd*, 679 A.2d 1284, 1290 (Pa.Super. 1996) ("It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not a part of the record in the case."). Moreover, while Appellant included the claim in his Rule 1925(b) statement, that action does not cure the failure to raise the issue before the trial court. *See Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009). Thus, the issue is waived.

Appellant's remaining issues assail the trial court's application of the PVSVIA, which relates "to protection of victims of sexual violence or intimidation" regardless of a preexisting relationship. Herein, we employ the identical standard of review that we use to review the propriety of an order entered pursuant to the Act's seasoned counterpart addressing the protection of victims of physical or sexual abuse by family members, *i.e.*, the Protection From Abuse Act ("PFA"), 23 Pa.C.S. §§ 6101-6122. *See e.g.*, 42 Pa.C.S. § 62A04(c) (PVSVIA proviso requiring Pennsylvania State Police to record and index valid orders in database pursuant to PFA); and § 62A18 (extending applicability of non-disclosure provisions relating to PFA). Our standard of review of protection orders is well ensconced: "We review the propriety of a PFA order for an abuse of discretion or an error of law." *Ferko–Fox v. Fox*, 68 A.3d 917, 920 (Pa.Super. 2013). We have described

this standard as "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." ***Depp v. Holland***, 636 A.2d 204, 205–06 (Pa.Super. 1994) (citation omitted).

Appellant's first contention is that the trial court erred in failing to require Petitioner to prove beyond a reasonable doubt that M.M. was the victim of sexual violence.[5] N.T., 3/10/16, at 27. The following statutory definitions are relevant to our review:

> **"Sexual violence."** Conduct constituting a crime under any of the following provisions between persons who are not family or household members:
>
> 18 Pa.C.S. Ch. 31 (relating to sexual offenses) [*e.g.*, § 3126 (Indecent Assault)] [.]
>
> . . . .
>
> **"Victim."** A person who is the victim of sexual violence or intimidation.

_____

[5] At the close of the hearing, the trial court misstated that it found M.M. a victim of "sexual intimidation" as opposed to sexual violence. N.T., 3/10/16, at 28. While the court apparently muddled the separate statutory definitions of "sexual violence" and "intimidation", the court's misstatement is harmless because the final PVSVIA order confirms the trial court's finding "that M.[M.] . . . is a victim of sexual violence . . . committed by [A.M.D. III]." PVSVIA Order, 3/10/16, at 2.

42 Pa.C.S. § 62A03. Similarly, "intimidation" is defined as harassment pursuant to 18 Pa.C.S. § 2709 (a)(4), (5), (6) or (7) or stalking pursuant 18 Pa.C.S. § 2709.1, when an adult directs either behavior toward a minor. *Id*.[6]

Appellant's argument is predicated upon the portion of the definition of "sexual violence" that references "[c]onduct constituting a crime." He extrapolates from that phraseology the requirement that a tribunal must have adjudged the respondent guilty of one of the underlying offenses in order for the petitioner to qualify as a victim. Specifically, Appellant reasons that, since the statutory definition of "sexual violence" relates to "Conduct constituting a crime under" one of the enumerated provisions of the Pennsylvania Crimes Code and the juvenile court declined to adjudicate him delinquent of indecent assault based upon the April 2015 episode, his conduct did not constitute a crime. *See* 42 Pa.C.S § 62A03. He therefore concludes that M.M. is necessarily excluded from the statutory definition of "victim," *i.e.*, "a person who is the victim of sexual violence or intimidation." *Id*. Stated another way, Appellant asserts, "In that the conduct recited

_____

[6] Consistent with the foregoing definitions, the PVSVIA provides two distinct types of protection orders: 1) an order protecting victims, regardless of age, of sexual violence; and 2) an order protecting a minor from intimidation by an adult over eighteen years old. Instantly, Petitioner does not assert that M.M. was a victim of intimidation by an adult. Hence, that form of protection is not implicated herein.

must 'constitute a crime[,]' proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . must be established, [and Petitioner] did not meet this burden[.]" Appellant's brief at 11. We disagree.

In the construction of statutes, we construe words and phrases according to their common usage. 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]"). Appellant's statement of the law is accurate insofar as the PVSVIA defines a victim as "A person who is the victim of sexual violence or intimidation" and "sexual violence" is described as "conduct constituting a crime under any of the [enumerated sexual assault and protection-of-minor] provisions between persons who are not family and household members." 42 Pa.C.S. § 62A03. Appellant's argument would be persuasive if the statutory analysis was restricted to a review of the definition of "sexual violence." However, as explained *infra*, his argument that the PVSVIA requires a finding of proof beyond a reasonable doubt, is untenable in light of the statutory framework as a whole. Thus, we reject Appellant's premise that a criminal conviction or other finding of proof beyond a reasonable doubt is a prerequisite to a successful PVSVIA claim.

The purpose of the PVSVIA is to provide victims of sexual violence safety and protection separate from criminal prosecution. **See** 42 Pa.C.S.

§§ 62A01 and 62A02(5) and (6).[7] While Appellant accurately highlights that the statutory definition of sexual violence refers to "conduct constituting a

_____

[7] Specifically, the Act's preliminary recitals provide:

**§ 62A01**. **Scope of chapter**

This chapter relates to protection of victims of sexual violence or intimidation.

. . . .

**§ 62A02**. **Findings and purpose**

The General Assembly finds and declares that:

(1) Sexual violence is the most heinous crime against a person other than murder.

(2) Sexual violence and intimidation can inflict humiliation, degradation and terror on the victim.

(3) According to the Department of Justice, someone is sexually assaulted every two minutes in the United States.

(4) Rape is recognized as one of the most underreported crimes, and studies indicate that only one in three rapes is reported to law enforcement.

(5) Victims of sexual violence and intimidation desire safety and protection from future interactions with their offender, regardless of whether they seek criminal prosecution.

(6) This chapter provides the victim with a **civil remedy** requiring the offender to stay away from the victim, as well as other appropriate relief.

42 Pa.C.S. § 62A02 (emphasis added).

crime," the emphasis of that definition is upon the nature of behavior and not, as Appellant argues, the burden of proof imputed from criminal law. Inasmuch as criminal conduct occurs independent of the state's decision to prosecute or the fact-finder's verdict, the statutory framework neither anticipates nor requires criminal prosecution or a finding of proof beyond a reasonable doubt.[8] The General Assembly acknowledged this reality in the "Findings and purpose" section of the statute by declaring, *inter alia*, "Rape is recognized as one of the most underreported crimes, and studies indicate that only one in three rapes is reported to law enforcement," 42 Pa.C.S. § 62A02 (4), and the "Victims of sexual violence and intimidation desire safety and protection from future interactions with their offender, **regardless of whether they seek criminal prosecution**." 42 Pa.C.S at § 62A02 (5) (emphasis added). As our legislature did not envision the criminal prosecution of all alleged perpetrators of sexual violence, it would be foolish to fashion an impediment to civil relief under the PVSVIA that requires victims to prove the elements of the underlying behavior beyond a reasonable doubt.

---

[8] Undeniably, where an assailant is prosecuted and convicted of a sexual offense, the criminal justice system has inherent protections that are not available to victims whose assailants elude prosecution. Indeed, the civil remedy of a protection order pursuant to the PVSVIA is entirely superfluous in criminal cases because district attorneys universally request, and courts routinely impose, no-contact orders as conditions of sentence or probation following convictions of crimes against the person.

This Court rejected a similar argument concerning the injection of criminal culpability into protection-from-abuse actions brought in civil court. In *Boykin v. Brown*, 868 A.2d 1264, 1266 (Pa.Super. 2005), a woman filed a PFA against her son's father alleging that he raped her while she was at his house for a custody exchange. Pursuant to § 6107 of the PFA, the plaintiff was required to prove, by a preponderance of the evidence, an allegation of abuse, which is defined, in pertinent part, as "[t]he occurrence of one or more [enumerated] acts between family or household members, sexual or intimate partners or persons who share biological parenthood." Significantly, like the definition of sexual violence outlined in the PVSVIA, the PFA definition of abuse references conduct that aligns with criminal offenses, *i.e.*, simple assault, aggravated assault, "rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault[,] incest[,]" false imprisonment, child abuse, and stalking. *See* § 23 Pa.C.S. § 6102 (a)(1)-(5).

During the PFA hearing, the father testified that the plaintiff had been at his home for five hours on the day the incident occurred and that the sexual encounter was consensual. The trial court held its ruling on the PFA petition in abeyance until the investigating authority determined whether or not it would pursue criminal charges against the father. After the District Attorney's Office subsequently informed the PFA court that it had declined to prosecute the father, the court dismissed the PFA petition.

In reversing the PFA court, we reasoned that, the PFA Act did not seek to determine criminal culpability and that the PFA court erred in relying upon the lack of prosecution as its basis to dismiss the petition rather than evaluating the alleged victim's evidence of abuse. *See also Snyder v. Snyder*, 629 A.2d 977, 982-83 (Pa.Super. 1993) ("[T]he Protection from Abuse Act does not seek to determine criminal culpability."). In sum, we concluded, "a determination by a District Attorney or the police as to whether to file criminal charges against a defendant in a PFA proceeding is not relevant to the PFA court's decision"). *Id* at 1266.

The same rationale applies herein. In both the PFA and the PVSVIA, the General Assembly referenced specific criminal offenses as a shorthand method of identifying behaviors that are subsumed by the respective statutory definitions of abuse and sexual violence. Accordingly, for the same reasons the *Boykin* Court criticized the PFA court for tying its PFA determination to the District Attorney's office decision to prosecute the underlying rape, we reject Appellant's contention that Petitioner was required to prove the underlying indecent assault beyond a reasonable doubt in order to establish sexual violence. Stated plainly, the notion that the definition of sexual violence requires, as a predicate to relief pursuant to the PVSVIA, the identical evidentiary standard needed to sustain a criminal conviction is untenable.

In addition, Petitioner was not required to prove by any formal standard that M.M. was a victim of sexual violence. Quite the contrary, the mere assertion that M.M. was a victim of sexual violence was sufficient to satisfy the initial evidentiary threshold as long as the trial court found it to be credible. Pursuant to § 62A06 (a)(1) and (2), in order to prevail on a PVSVIA claim and to achieve the desired result of a final no-contact order, a petitioner must "(1) **assert** that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and (2) **prove** by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant." 42 Pa.C.S. § 62A06 (a)(1) and (2) (emphases added). Instantly, the Petitioner asserted that M.M. was the victim of sexual violence in relation to the April 2015 episode, and during the ensuing evidentiary hearing, she presented evidence regarding the encounter and the presence of a continued risk of harm posed by Appellant, *i.e.*, the psychological harm of Appellant's persistent presence at M.M.'s school even though he is not enrolled at that institution. As the PVSVIA requires only that a petitioner assert that he or she is a victim of sexual violence, which Petitioner did herein and the trial court accepted as credible, we reject Appellant's contention that the trial court applied the wrong standard of proof as to the initial prong of § 62A06(a).

Moreover, to the extent that Appellant challenges the trial court's finding that M.M. was, in fact, the victim of sexual violence, no relief is due. As noted *supra*, the trial court determined that M.M. did not consent to the April 2015 sexual encounter. It further explained that, as the court presiding over the juvenile delinquency proceeding, it declined to adjudicate Appellant delinquent because it was not clear whether the lack of consent was sufficiently communicated to warrant criminal culpability for indecent assault beyond a reasonable doubt. N.T., 3/10/16, at 27. However, in presiding over the PVSVIA petition, the same jurist determined that Appellant's behavior on the April 2015 night was tantamount to sexual violence under the PVSVIA insofar as M.M. did not agree to Appellant's sexual advances. *Id*. As the certified record supports the trial court's determination as to the alleged criminal conduct, we do not disturb its finding of sexual violence as defined in the PVSVIA. *See* Pa.R.C.P. 1957 ("The decision of the court may consist of only general findings of sexual violence and/or intimidation[.]").

Finally, we address Appellant's argument that the trial court erred in finding that the Petitioner established a continued risk of harm by a preponderance of the evidence. He complains that the evidence that Petitioner presented regarding Appellant's repeated presence at school activities did not demonstrate harm. Again, we disagree.

- 14 -

The preponderance of the evidence standard of proof is the least demanding of the three standards of proof typically used in Pennsylvania jurisprudence. *Commonwealth v. Batts*, 163 A.3d 410, 453 (Pa. 2017). It is "a more likely than not inquiry, supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision." *Id*. (citations omitted).

During the hearing, M.M. testified that Appellant appeared at two school-sponsored events where she was a cheerleader and that he received authorization from the school to shadow a former teacher during academic hours. N.T., 3/10/16, at 5, 6. First, on January 22, 2016, Appellant attended a breast-cancer awareness event to recognize teachers, including his mother, who were fighting breast cancer. *Id*. at 5, 8, 12. Appellant posed near M.M. in a group photograph that included approximately sixty people. *Id*. at 10. M.M. testified that Appellant initially stood right behind her. *Id*. at 10, 15. He moved a couple of paces away after his father took the space immediately next to her. *Id*. at 12. Although Appellant did not speak to M.M. or make any sexual advances toward her, he bumped into her during the event while she was walking with a friend, and at another point, she thought he was going to to address her. *Id*. at 9, 12. M.M. testified that she was afraid that Appellant was going to attempt to talk to her, approach her, or contact her physically. *Id*. at 6.

Four days later, Appellant accompanied an exchange student to a basketball game that was scheduled at the high school. *Id*. at 6, 13. The student was playing in the game, but Appellant had never come to observe him prior to that night. *Id*. at 17. While Appellant approached M.M., who was with other cheerleaders, near the concession stand, he did not attempt to speak or touch her. *Id*. at 15, 17. However, he did not order food. *Id*. at 17. As M.M. explained, "He was just trying to talk and stand there. . . . [H]e wasn't . . . doing anything, like ordering food or anything." *Id*. at 17. Nevertheless, Appellant's presence made her nervous and uncomfortable. *Id*. "He came close . . . enough that [she] was scared." *Id*. at 13. M.M. testified that she was frightened when she observed him on the night of the basketball game, and indicated that two months later, she is still afraid of potential contact with Appellant. *Id*. at 6. Specifically, M.M. worries that her safety would be in danger if Appellant were permitted to return to First Baptist Christian School, which she believes the school would endorse if her PVSVIA petition was denied. *Id*. at 7, 16.

The certified record validates M.M.'s concerns about the school's apathy. In fact, as noted *supra*, immediately before Petitioner filed the instant petition, school administrators accommodated Appellant's request to attend the school for no other reason than to shadow his previous science teacher and associate with former classmates. *Id*. at 24, 26. M.M. further expounded that, when she told an administrator of her apprehension about

Appellant's presence, he told her that "the school had no problem with [Appellant] coming back and visiting" and that "if [Appellant] wanted to, he could come back a couple more times." *Id*. at 16.

The foregoing evidence sustains the trial court's finding by a preponderance of the evidence that Appellant's recurrent presence at First Baptist Christian School has placed M.M. at continued risk of harm by causing "mental or emotional harm or damage[.]" PVSVIA Order, 3/10/16, at 2. Appellant complains that the court's finding of harm is specious in light of the fact that he did not interact with M.M. at the two events that he attended. However, this argument ignores the fact that his presence at the school, and the administration's decision to endorse it, are the two causes of apprehension, fear, and emotional distress which shape the harm M.M. seeks to quell with the final PVSVIA order.

While Appellant argues that the PVSVIA is not intended to provide protection to individuals who merely had a sexual encounter from seeing each other in social settings, he does not accurately characterize this case. Appellant's extraordinarily cavalier perspective of the April 2015 ordeal disregards the trial court's specific finding of sexual violence. Contrary to Appellant's representations, it was not simply a casual sexual encounter between two consenting people. More importantly, Appellant's contention that the Act's protections do not extend to M.M. discounts the reality that, as a victim of sexual violence, M.M.'s fear of harm and her desire to avoid

future contact with Appellant is paramount. Indeed, protecting victims of sexual abuse from future interaction with their assailants is the precise purpose of the statute. *See* 42 Pa.C.S. § 62A02 (**Findings and purpose**) (5) ("Victims of sexual violence and intimidation desire safety and protection from future interactions with their offender, regardless of whether they seek criminal prosecution."); 42 Pa.C.S. § 62A02 (6) ("This chapter provides the victim with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief."). No relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/27/2017</u>