**[J-13-2021] [MO:Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | | |
|---|---|---|---|
| K.N.B., | | : | No. 20 WAP 2020 |
| | | : | |
| | Appellee | : | Appeal from the Order of the |
| | | : | Superior Court entered January 30, |
| | | : | 2020 at No. 1003 WDA 2018 |
| | v. | : | affirming the Order of the Court of |
| | | : | Common Pleas of Clarion County |
| | | : | entered June 15, 2018 at No. 155 |
| M.D., | | : | CD 2018. |
| | | : | |
| | Appellant | : | SUBMITTED:  January 25, 2021 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE MUNDY**                                 **DECIDED: SEPTEMBER 22, 2021**

For the reasons set forth in the majority, I agree the six-year catch-all statute of limitations applies and join that portion of the majority opinion.  However, I dissent from the majority's resolution of the second issue because I would hold that a plaintiff must demonstrate, by a preponderance of the evidence, they are "at a continued risk of harm from the defendant."  42 Pa.C.S. § 62A06(a).

Throughout the duration of this case, each of the courts has struggled to determine the applicable standard for evaluating whether K.N.B. was at a continued risk of harm from Appellant.  Likewise, Appellant has challenged each court's decision that K.N.B.'s subjective fear is all that is required.  The trial court made no findings that Appellant posed a continued risk of harm to K.N.B. such that the entry of the SVPO was needed for her protection.  Similarly, the majority does little to clarify the appropriate standard in making this determination, and seemingly approves such orders in circumstances where there is

no evidence to support a continued risk of harm from defendant aside from the plaintiff's subjective fear of defendant.

As *E.A.M. v. A.M.D. III*, 173 A.3d 313 (Pa. Super. 2017), is the sole and seminal case relied upon by each of the courts in this matter, I believe a closer review of the case is essential.[1] In *E.A.M.*, Mother, E.A.M., petitioned for a Sexual Violence Protective Order (SVPO) on behalf of her minor daughter, M.M. M.M. had a sexual encounter with the appellant which was reported to police. A juvenile delinquency petition was filed but ultimately dismissed. Thereafter, E.A.M. filed a petition for an SVPO on behalf of her daughter asserting the appellant who was no longer enrolled at M.M.'s high school was appearing at school activities, staring at M.M., and trying to speak with her. *E.A.M.*, 173 A.3d at 315. M.M. informed the school that Appellant's presence at school activities made her feel unsafe, but the administration declined to address the situation because the appellant's mother was a teacher at the school, and the school endorsed his continued presence. *Id.* A temporary order was granted, and an evidentiary hearing was scheduled. After a hearing, a final protection order was entered, prohibiting the appellant from engaging in any contact with M.M. for three years. *Id.*

On appeal, the Superior Court affirmed. The court recounted the various incidents of the appellant's appearance at M.M.'s high school, noting "[t]he certified record validates M.M.'s concerns about the school's apathy." *Id.* at 321. Importantly, the court noted that Appellant's argument that he did not interact with M.M. at these school events "ignores the fact that his presence at the school, and the administration's decision to endorse it, are the two causes of apprehension, fear, and emotional distress which shape the harm M.M. seeks to quell with the final PVSVIA order." *Id.* Accordingly, the *E.A.M.* Court found

---

[1] Nevertheless, as *E.A.M.* is a Superior Court case, its holding is not binding on this Court.

the appellant was a continued risk to the victim and the SVPO could protect her from this additional harm.

Here, the trial court applied *E.A.M.* to determine the standard required to show a continued risk of harm. Trial Ct. Op., 8/29/18, at 9. The trial court noted three facts influenced the decision in *E.A.M.*: (1) the victim was a student at the high school and the defendant was a former student who no longer attended the school but was given permission by the school to "shadow" former teachers; (2) the victim "experienced mental or emotional harm or damage, even if the former classmate did not speak to her or make sexual advances towards her[;]" and (3) "[t]he victim testified that she was afraid the perpetrator was going to attempt to talk to her, approach her, or contact her physically and the school accommodated the perpetrator's request to visit." *Id.* (citing *E.A.M.*, 173 A.3d at 320).

Focusing on the second finding in *E.A.M.*, in this case the trial court concluded that plaintiff continued to experience mental or emotional harm or damage even if Appellant did not speak to her or make sexual advances toward her. The court additionally noted that plaintiff was afraid Appellant was going to attempt to approach her, and there was no restriction on his possible access to her. *Id.* at 9-10.[2] The trial court made no findings in

---

[2] A review of the hearing transcript reveals the trial court grappled with what standard to apply.

> So I said a few minutes ago that maybe his intent on wanting to have contact with her isn't the real question, but it's her reaction to it, but as I think about it, that's not really correct because in assessing whether there's a continuing risk of harm, I think I do have to take into account what evidence there is of defendant's intent and actions in actually trying to have contact with her in terms of assessing whether there is a risk or not.
>
> If it's just entirely haphazard or unexpected or random or unintentional contact, yes, I'm not doubting that there's an emotional reaction on the part of [K.N.B.].

this case that Appellant had attempted to contact K.N.B., or any factual findings that Appellant was the cause of this fear, in determining a SVPO was necessary to prevent K.N.B. from being at a continued risk of harm from Appellant. *See E.A.M.*, 173 A.3d at 321 (the defendant's "presence at the school, and the administration's decision to endorse it, are the two causes of apprehension, fear, and emotional distress which shape the harm M.M. seeks to quell with the final PVSVIA order") (emphasis added). Nevertheless, the trial court found that plaintiff "proved by a preponderance of the evidence she was at a continued risk of harm from [Appellant]." *Id.* at 10.

On appeal, the Superior Court also reviewed Appellant's assertion that K.N.B. failed to prove she was at a continued risk of harm. The court noted, "[l]ittle guidance exists for trial courts regarding the applicable standard for finding a continued risk of harm. Nevertheless, we faced a situation similar to the one at hand in *E.A.M.*, 173 A.3d at 320." Superior Ct. Op., 1/30/20, at 15. Seemingly wholesale adopting the trial court's reasoning, the court held that Appellant's "recurring presence, when it 'causes [the victim] . . . apprehension, fear, and emotional distress,' is sufficient evidence to demonstrate a continued risk of harm." *Id.* at 16. The court then concluded Appellant's presence was the cause of K.N.B.'s "apprehension, fear, and emotional distress." *Id.* Therefore, it concluded the trial court did not abuse its discretion in finding K.N.B. is at a continued risk of harm from Appellant. *Id.*

---

I'm not doubting that, but if the defendant's not making any - - taking any steps positively in any way to try to maintain any kind of contact with her, isn't that a factor . . . of whether there's a continuing risk?

I mean, from the testimony, it sure seems to me that Wal-Mart, you know, walking the dog, Wal-Mart, seeing him around campus, occasionally at a party, I mean he came up to her at a party and told a joke and wanted to fist bump her, so I mean it was more of a friendly exchange, according to her testimony.

N.T., 6/15/18, at 98-99.

The Majority essentially accepts this same reasoning. Initially, the majority looks to the statutory language and notes the law requires "plaintiff must prove that he or she (or another individual) is 'at a continued risk of harm from the defendant.'" Majority Op. at 13 (citing 42 Pa.C.S. § 62A06(a)). The majority then acknowledges that the "defendant's own intent may inform this inquiry in some cases." *Id.* Nevertheless, the majority comes to the conclusion that because "K.N.B. risks ongoing harm from M.D. given that his very presence triggers K.N.B.'s panic attacks[,]" "whether or not M.D. subjectively intends to harm K.N.B. is irrelevant under the statute because she risks ongoing harm regardless of his intent." *Id.* (citing *E.A.M.*, 173 A.3d at 321). Respectfully, I disagree. Absent a finding that Appellant has done something preventable by an SVPO to cease to be a continued risk of harm to K.N.B., the plain language of Section 62A06(a) cannot be satisfied.

While *E.A.M.* appears to accept the idea that the plaintiff's subjective fear is enough to support a finding of continued risk of harm from the defendant, I am not persuaded that was the intent of the holding in *E.A.M.* The basis for affirming the final order was to prevent the appellant from continuing to appear at M.M.'s high school, particularly in light of the school's failure to act in a manner that would protect M.M. The subjective fear M.M. harbored was a result of the appellant's presence at her high school, coupled with the school's apathy towards her complaints, which was the basis for entering an order prohibiting him from being near M.M.

Instantly, the focus solely on K.N.B.'s panic attacks without regard to Appellant's conduct fails to examine whether K.N.B. proved by a preponderance of the evidence that she is at a continued risk of harm from him. The record indicates that Appellant has not attempted to make any contact with K.N.B. since 2016. She described that after the assault she would sometimes see him on campus or walking his dog near her house.

However, the event that caused her to seek an SVPO was a happenstance encounter where she saw Appellant at a Walmart in 2018, at which time she was no longer a student at the University. Absent further facts, it is my view that the chance encounters may not rise to a continued risk of harm. Nor do I think a happenstance encounter is the sort of harm the PVSVIA is designed to prevent. Indeed, such encounters would not be preventable under the SVPO entered by the trial court, which only prohibits Appellant from abusing or contacting the victim.[3] Without an articulable basis for its findings from the trial court, it is nearly impossible to review whether K.N.B. met the burden of proof.

While I in no way question that K.N.B. suffers from panic attacks, I would conclude the trial court misapplied the standard by failing to consider whether the actions of Appellant present a "continued risk of harm from the defendant." Solely looking at K.N.B.'s subjective fear fails to give meaning to the statute which requires proof by a preponderance of the evidence that K.N.B. is at a continued risk of harm from Appellant. As Appellant accurately observes, "[u]nder this standard, virtually every plaintiff would be entitled to entry of a final protection order." Appellant's Brief at 50-51. Because I believe the trial court misapplied the standard in assessing whether K.N.B. proved by a preponderance of the evidence that she was at a continued risk of harm from Appellant, I would reverse and remand. Accordingly, I dissent.

---

[3] The full text of the prohibited conduct under the order states:

> Defendant shall not abuse, harass, stalk or threaten any of the above persons in any place where they might be found.

> Defendant shall not contact Plaintiff, or any other person protected under this order, by telephone or by any other means, including through third persons.

SPVO, 2/15/18.