J-A15037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN R. RODGERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHELE M. JEWETT | : | |
| | : | |
| Appellant | : | No. 1428 WDA 2021 |

Appeal from the Order Entered November 22, 2021
In the Court of Common Pleas of Mercer County
Civil Division at No(s): 2021-2543

BEFORE: BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

DISSENTING MEMORANDUM BY SULLIVAN, J.:         **FILED: July 20, 2023**

I respectfully dissent. Upon review, I would conclude that the trial court misapplied the law in granting John R. Rodgers ("Rodgers") a final order pursuant to the Protection From Abuse ("PFA") Act,[1] because, even deferring to the trial court's credibility determinations,[2] Rodgers failed to prove he had an objectively reasonable fear of bodily injury based on the course of conduct of Michele M. Jewett ("Jewett").

This Court has explained that "[t]he purpose of the [PFA Act] is to protect the victims of domestic **violence** from the perpetrators of such

---

[1] **See** 23 Pa.C.S.A. §§ 6101-6122.

[2] Our standard of review for an order granting PFA relief is abuse of discretion, and we must view the evidence of record in the light most favorable to the prevailing party. **Kaur v. Singh**, 259 A.3d 505, 509 (Pa. Super. 2021). On appeal, this Court defers to the trial court's credibility determinations. **Id**.

abuse." *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999) (internal citations omitted) (emphasis added).[3] The PFA Act "is concerned with persons who have or have had domestic, familial and/or romantic relationships. It is a domestic relations statute, not a statute governing persons without any such relations." *Scott v. Shay*, 928 A.2d 312, 314 (Pa. Super. 2007); *accord* 23 Pa.C.S.A. § 6102(a) (providing that abuse must occur "between family or household members, sexual or intimate partners or persons who share biological parenthood").

A PFA petitioner must establish that "abuse" occurred by a preponderance of the evidence. *See E.K.*, 237 A.3d at 519. The PFA Act ("the Act") defines "abuse," in relevant part, as:

> (5)    Knowingly engaging in a *course of conduct* or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in *reasonable fear of bodily injury*. . . ..

23 Pa.C.S.A. § 6102(a)(5) (emphases added). *Bodily injury* is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.[4] Further, a petitioner's fear must be *objectively reasonable*. *See*, *e.g.*,

---

[3] Conversely, criminal culpability is not at issue in PFA proceedings. *See E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020); *accord E.A.M. v. A.M.D. III*, 173 A.3d 313, 319 (Pa. Super. 2017).

[4] *See also* 23 Pa.C.S.A. § 6102(b) (stating that "[t]erms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S.[A.] (relating to crimes and offenses)").

*K.N.B. v. M.D.*, 259 A.3d 341, 351 (Pa. 2021) (observing that the General Assembly conveyed in the PFA Act that "a plaintiff's fear of harm must be objectively reasonable to support the issuance of a protective order").

The relevant factual and procedural history of this case as follows: Rodgers began an extra-marital affair with Jewett in May 2020, which ended acrimoniously nearly a year later, after which the parties, alleging abuse at the hands of each other, petitioned for temporary and then final PFA orders. *See* N.T., 11/22/21, at 4, 10-11, 43, 59, 94. Ultimately, only Rodgers received a final PFA order. *See id*. at 140-41.

The evidence in the light most favorable to Rodgers is as follows: At the end of the affair, Jewett was angry at Rodgers, and she told him she would get back at him by telling his wife (hereinafter "Wife") about the affair and sending her "the information that she had." *Id*. at 59-60. Jewett told Rodgers via text message to "fess [sic] up to [Wife] and take your beating. We will both leave you." *Id*. at 74. After the breakup, Rodgers learned that Jewett had taken a photograph of her and Rodgers, while the affair was ongoing, from her home surveillance system. Following the breakup, Jewett posted it to Facebook. *See id*. at 64-65. In March 2021, after the affair concluded, Jewett, using an alias, sent Wife e-mails at her work e-mail address about the affair. *See id*. at 24-26. About six months later, in September 2021, Wife received approximately thirty-four additional e-mails from Jewett containing screenshots of text messages between Rodgers and Jewett. *See id*. at 29,

66. There is no testimony by Wife that Jewett threatened her or Rodgers with any physical harm.

Additionally, in October 2021, prior to Rodgers petitioning for a temporary PFA order, Jewett approached his daughter, M.R., in the bathroom of the restaurant where M.R. worked and told her about the affair. *See id*. at 103. According to M.R., Jewett did not threaten her or Rodgers with physical harm. *See id*. at 106. Jewett, additionally, sent a friend request to Rodgers's sister-in-law around the day of the hearing on Rodgers's petition for a temporary PFA order. *See id*. at 111. Rodgers testified that he feared Jewett, but he did not assert that Jewett threatened him with any physical injury. Rodgers, on direct examination, expressed fear of escalation, but on cross-examination, Rodgers testified that Jewett had never physically injured him, never physically threatened him, and that her only threat was not of physical harm but to tell his family about the affair. *See id*. at 80, 85-86. Rodgers later testified on re-direct examination that he feared Jewett's conduct would escalate to physical harm, but his testimony lacks any mention of physical threats against him either during or after the affair. *See id*. at 94.[5]

_____

[5] The majority relies heavily on the fact that Jewett informed Rodgers that she had been criminally charged after her ex-husband accused her of pointing a loaded gun at him. *See* Majority Memorandum at 1 n.1. However, this fact is unsupported by the record. Firstly, Rodgers testimony is devoid of any mention of this alleged conversation with Jewett. He never mentions discussing this in any way with Jewett, and he does not cite to this alleged incident as grounds for his fear of Jewett. *See*, *e.g.*, N.T. 11/22/21 at 80, 92-
*(Footnote Continued Next Page)*

- 4 -

In concluding that Rodgers proved abuse, within the meaning of the Act, the court concluded that Jewett's conduct would "place a reasonable person in fear," and that a "reasonable person would be afraid based on the invasion of privacy of the individual." **See id**. at 140-41. The court later elaborated that it concluded Rodgers "was in fear for his personal safety, due to the ongoing, persistent, and escalating nature of the multiple instances and methods employed by [Jewett] to harm, disrupt, harass, and destroy the **personal life and career** of [Rodgers]." Trial Court Opinion, 1/26/22, at p. 2 (¶ 1) (emphasis added).[6]

_____

94 (Rodgers explaining why he feared Jewett). Secondly, Jewett was questioned about the charges, but she unequivocally denied ever pointing a gun at her ex-husband, and she specifically testified that she told Rodgers she pled guilty to summary offenses for "calling her ex-husband a bad word." **See id**. at 18-19; **see also id**. at 127-28 (Jewett explaining the charges, but providing no information about the allegations, and testifying that her summary convictions were expunged). Thirdly, Wife, in a statement that the trial court deemed not "responsive," **id**. at 40-41, and which the Court specifically noted it did not consider, **see** Trial Court Opinion, 1/26/22, at pp. 7-8 (¶ 4), briefly mentioned the charges and prior allegations about the gun. Finally, no certified record of the charges or any testimony verifying the facts underlying the plea were submitted as evidence. Thus, there is ultimately no properly admitted evidence or substantive evidence in the record about the nature of the original allegations by Jewett's ex-husband (an individual who whose relevance to these proceedings was tenuous).

[6] The majority states the trial court relied on a prior allegation by Jewett's ex-husband that she pointed a gun at him as part of its finding that Rodgers had a reasonable fear of bodily injury. **See** Majority Memorandum at 2 n.2. To the contrary, the trial court notably did not reference Jewett's prior summary guilty plea or the facts supporting the plea in either its findings of fact and legal conclusions at the hearing **or** in its Pa.R.A.P. 1925(a) opinion in support of its conclusion that Rodgers proved "abuse" by a preponderance of the
*(Footnote Continued Next Page)*

Subsection 6102(a)(5) requires a showing of "abuse," namely, that Jewett engaged in a course of conduct giving rise to an **objectively reasonable** fear of **bodily injury** directly upon Rodgers. However, the evidence in the light most favorable to Rodgers, does not support the trial court's legal conclusion that "abuse" occurred within the meaning of the Act. The evidence of record establishes that Jewett sent e-mails and text messages to Rodgers and Wife about the affair; she posted a picture of herself with Rodgers on her personal Facebook page; she, in person, informed Rodgers's daughter about the affair; and she sent a Facebook friend request to Rodgers's sister-in-law. **Id**. at 24, 27, 29, 103-106, 111. However, Rodgers conceded that Jewett never physically harmed or threatened him, either directly, or indirectly. **See id**. at 85. He also admitted that Jewett's only "threat" was to tell his wife about the affair. **See id**. He explained that his fear arose from "speculation" about how Jewett's conduct **may** escalate to the infliction of bodily injury, but Rodgers never testified that there was a history of physical abuse between the two or even threats thereof. **See id**. at 94. I further note

_____

evidence. **See** N.T., 11/22/21, at 140-41 (trial court's statement findings of fact and conclusions of law in which it omits discussion of Jewett's prior guilty pleas or the allegations underlying them); **accord** Trial Court Opinion, 1/26/22, at pp. 2-3 (¶¶ 1-2), pp. 8-9 (¶¶ 5-6, 8) (concluding Rodgers had established abuse, but without referencing Jewett's prior convictions or the allegations underlying them). In fact, the trial court's only mention of the alleged incident with the ex-husband is limited to its response to Jewett's evidentiary argument that the information was hearsay and should have been excluded. **See** Trial Court Opinion, 1/26/22, at pp. 7-8 (¶ 4).

that Jewett's statement to Rodgers via text message that he needed to "take [his] beating," in context, referred to her demand that he confess the affair to Wife: "You need to fess up to her[, *i.e.*, Wife] and take your beating. We will both leave you. She already knows anyhow, cause [sic] she showed up at the office." ***Id***. at 74. Thus, in context, Jewett's reference to a "beating" cannot reasonably be read to constitute a threat of bodily injury by Jewett. The word was plainly used figuratively; and even if taken literally, Jewett indicates the "beating" should occur by Wife, not Jewett. Further, Jewett's belief that Rodgers had not "suffer[ed]" enough occurred in context of her comments about Rodgers not getting the aforementioned "beating" and not getting divorced. ***See id***. at 92-93. Crucially, Rodgers conceded that Jewett had never physically threatened him, never physically injured him, never threatened him with a firearm, and had made no threats to him apart from threatening to tell his wife about the affair. ***See id***. at 85.[7]

This case is factually similar to ***D.H. v. B.O.***, where the PFA petitioner, D.H., left town for vacation and, on his return, received from the defendant, B.O., "several 'disturbing' messages at his place of employment." 734 A.2d 409, 410 (Pa. Super. 1999). D.H. ended his relationship with B.O. B.O. then contacted him via pager and telephone calls at home and the office. ***See id***.

_____

[7] Wife's testimony was devoid of evidence that Jewett, in her communications, threatened her or Rodgers with bodily injury. Additionally, M.R.'s affirmatively testified that Jewett did not threaten her or her father "in any way" during their interaction. ***See*** N.T., 11/22/21, at 106-107.

B.O. attempted to reach D.H. at least thirteen times over five days and stated, among other things, "I know what you['re] doing with that pervert[, your co-worker]," and, "I'm going to get him any way I can." *Id*. at 410-11. B.O. actually threatened the life of D.H.'s boss, and threatened to come to D.H.'s office to strangle his boss. *See id*. at 411. B.O. further threatened D.H. that he, B.O., would reveal to authorities harmful information about the company for which D.H. worked, including that it "expended funds to send its employees, [D.H and a co-worker], on vacation." *Id*. at 411. The trial court granted D.H. a permanent PFA order against B.O. for one year, based on section 6102(a)(5), and this Court reversed the grant of the PFA order and concluded that this course of conduct does not rise to the level of placing the PFA petitioner in reasonable fear of bodily injury. *Id*. at 410–12.

As in ***D.H.***, the trial court's findings of fact, *i.e.*, that Jewett attempted to "harm, disrupt, harass, and destroy the ***personal life and career*** of [Rodgers,]" Trial Court Opinion, 1/26/22, at p. 2 (¶ 1) (emphasis added), are insufficient to support its legal conclusion that Rodgers had an ***objectively*** reasonable fear of ***bodily injury*** based on Jewett's course of conduct, in which she attempted to destroy Rodgers's personal life by informing his family about their affair. ***See D.H.***, 734 A.2d at 412.[8]

---

[8] The majority relies principally on ***E.K. See*** Majority Memorandum at 10-11. ***E.K.*** is inapt because it employed a different subsection of the Act, *i.e.*, section 6102(a)(2), which requires proof of different elements, namely,
*(Footnote Continued Next Page)*

In sum: Jewett's conduct, although wholly inappropriate and possibly criminal, did not rise to the level of "abuse" under section 6102(a)(5) of the PFA Act, because the facts of record did not bear out any history of violence between Rodgers and Jewett, or any threats of bodily harm to Rodgers. Thus, as a matter of law, Rodgers failed to show an *objectively* reasonable fear of *bodily* injury as required under the statute. *See D.H.*, 734 A.2d at 412. Accordingly, I would reverse the order granting Rodgers's petition for a final order under the PFA Act. For these reasons, I respectfully dissent.

---

"reasonable fear of imminent serious bodily injury." *See E.K.*, 237 A.3d at 519-20. Even more saliently, while *E.K.* concerned harassing social media posts, that case is dissimilar because those posts occurred against a backdrop of an extensive history of "past physical abuse" directly between the parties to the petition and stalking of the petitioner by the defendant. *Id*. at 520. In *E.K.*, the court heard evidence, including, but not limited to, J.R.A. hitting E.K. with his truck, grabbing her by the neck and choking her, dragging her down the street in a headlock while pregnant, and "unspecified sexual violence." *Id*. at 516. Unlike in *E.K.*, and as the majority concedes, the record contains no past physical violence by Jewett toward Rodgers, or threats thereof. *See* Majority Memorandum at 9.