J-S28033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LADONNA DENTON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN DELAUTER | : | |
| | | |
| Appellant | | No. 78 MDA 2025 |

Appeal from the Order Entered December 16, 2024
In the Court of Common Pleas of York County Civil Division at
No(s):  2024-SU-002019-12

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: SEPTEMBER 19, 2025**

Appellant, John Delauter, appeals from a protection from intimidation ("PFI") order entered in the York County Court of Common Pleas, pursuant to the Protection of Victims of Sexual Violence or Intimidation Act, 42 Pa.C.S.A. §§ 62A01-62A20 (the "Act"), in favor of Appellee, LaDonna Denton.  We affirm.

The relevant facts and procedural history of this appeal are as follows. On July 12, 2024, Appellee filed a petition seeking a PFI order under the Act. In the petition, Appellee explained that she had worked for Appellant. Appellee claimed that Appellant sexually harassed her during her employment. After Appellee quit in 2020, Appellant began to stalk Appellee and her family. Appellee described one incident that occurred the day before the filing of her petition.  Specifically, Appellee had left her house to drive to a local

magistrate's office.[1]  Appellee noticed Appellant following her in his vehicle. When Appellee arrived at the magistrate's office, she "moved to [three] different parking spots, and [Appellant] followed each time." (PFI Petition, filed 7/12/24, at 2).  Appellee insisted that Appellant "had no real reason to be there other than to intimidate" her.  (*Id.*)  Based upon these allegations, the court issued a temporary PFI order and scheduled a hearing on the matter.

The court conducted a hearing on November 20, 2024.  At that time, the court received testimony from Appellee and her two witnesses.  At the conclusion of the hearing, the court continued the matter to receive additional testimony.  The hearing resumed on December 16, 2024.  At that time, the court received additional testimony from Appellee, as well as testimony from Appellant and his wife.  That same day, the court issued an order and opinion granting a final PFI order in favor of Appellee.  The order remains in effect until December 16, 2027, and it directs Appellant to have no contact with Appellee.

Appellant filed a motion for reconsideration on December 24, 2024.  In it, Appellant argued that "[n]o testimony was provided showing that since 2020, [Appellee] was at a continued risk of harm of sexual violence from

---

[1] Regarding Appellee's appearance at the magistrate's office, Appellant had contacted police and alleged that Appellee had committed certain thefts of his property.  (*See* N.T. Hearing, 11/20/24, at 5, 53).  Thus, Appellee went to the magistrate's office on the date in question to attend the preliminary arraignment related to these theft charges.  (*Id.* at 5-6).

[Appellant]." (Motion for Reconsideration, filed 12/24/24, at ¶7). The court denied the motion for reconsideration on December 27, 2024. Appellant timely filed a notice of appeal on January 15, 2025. The court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant did not file one.

Appellant now raises one issue for our review:

> Did the trial court err as a matter of law and abuse its discretion by finding that Appellant … poses a continued risk of harm to [Appellee], contrary to the evidence presented.

(Appellant's Brief at 6).

On appeal, Appellant acknowledges Appellee's testimony that "alleged incidents of inappropriate sexual contact occurred during the time of her employment." (*Id.* at 15). Appellant insists, however, that Appellee did not file "any complaints or petitions for protection during the course of her employment … or immediately thereafter." (*Id.*) Appellant also contends that Appellee did not allege that any inappropriate contact occurred after the termination of her employment. Appellant emphasizes that "[t]here were only two (2) interactions between [the parties] since [Appellee] ended her employment in 2020[.]" (*Id.* at 16). Appellant characterizes these interactions as innocuous.

Appellant insists that Appellee's "actions since the conclusion of her employment with [Appellant] do not evidence a pattern of fear resulting in a continued risk of harm from [Appellant]." (*Id.* at 18). "Despite [Appellee's]

- 3 -

testimony [about] being afraid to leave her home," Appellant argues that Appellee's "failure to file for a protective order in the past [does] not validate her testimony of fear." (*Id.*) Moreover, Appellant posits that the timing of Appellee's PFI petition demonstrated an attempt to retaliate against Appellant for his pursuit of the theft charges against Appellee. Under these circumstances, Appellant concludes that the trial court erred in granting the PFI order in favor of Appellee. We disagree.

The following principles inform this Court's interpretation of the Act:

> The objective of all interpretation and construction of statutes is to ascertain and effectuate the legislative intent behind the statute. When the plain language of a statute is clear and free from all ambiguity, it is the best indication of legislative intent.
>
> When, however, the words of a statute are ambiguous, a number of factors are used in determining legislative intent, including the purpose of the statute and the consequences of a particular interpretation. Furthermore, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute. Lastly, we presume that the legislature did not intend an unreasonable or absurd result.

*A.M.D. on Behalf of A.D. v. T.A.B.*, 178 A.3d 889, 892-93 (Pa.Super. 2018) (internal citations and quotation marks omitted).

The General Assembly expressly announced the purpose of the Act as follows:

### § 62A02.  Findings and purpose

\*    \*    \*

- 4 -

(5) Victims of sexual violence and intimidation desire safety and protection from future interactions with their offender, **regardless of whether they seek criminal prosecution.**

(6) This chapter provides the victim with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief.

42 Pa.C.S.A. § 62A02(5), (6) (emphasis added). "Indeed, protecting victims of sexual abuse from future interaction with their assailants is the precise purpose of the statute." *E.A.M. v. A.M.D. III*, 173 A.3d 313, 321 (Pa.Super. 2017), *appeal denied*, 646 Pa. 203, 184 A.3d 145 (2018).

Further, the Act places the following evidentiary burden upon petitioners:

**§ 62A06. Hearings**

**(a) General rule.**—Within ten business days of the filing of a petition under this chapter, a hearing shall be held before the court where the plaintiff must:

(1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S.A. § 62A06(a).

Instantly, Appellee testified about incidents of sexual violence or intimidation that occurred while she worked with Appellant:

He would have sexual relations on the desk with [his] wife when I was showing up for work. He would be naked in his hot tub, which I had to walk past to get to work. He would

- 5 -

smack my bottom. He would make comments with other employees [about] how he would like to tag team me and my teenage daughter. He would make comments about the size of my breasts saying that they were Victoria Secrets.

He told me he wanted to have a relationship with me, which I declined. He tried to kiss me in the hallway, telling me that [there are] no cameras in the hallway of his house, his wife would never know, which I declined.

(N.T. Hearing, 11/20/24, at 74).[2] Thereafter, Appellee provided additional details about specific instances of harassment. Appellee admitted that she had consulted with an attorney about Appellant's behavior, and "I was all set to go ahead and file the paperwork and then I quit." (*Id.* at 82-83).

Several months after Appellee quit, she first learned that Appellant had made criminal allegations against her. Appellee subsequently attempted to avoid Appellant, but Appellant continued to cross paths with Appellee and her family. (*See id.* at 86-88). Regarding the incident outside the magistrate's office, Appellee stated:

I was shaking, so I sat in the car. I honestly don't even remember seeing any other cars in the parking lot until I saw [Appellant's] car come around behind me. At that point I called my mom because I was terrified to even get out of my car.

(*Id.* at 96). Appellee further asserted:

---

[2] In analyzing the Act, the trial court observed that "sexual violence is defined as conduct constituting a crime under various sections of Title 18 including Chapter 31 of said Title…." (Trial Court Opinion, filed 12/20/24, at 3). The court concluded that Appellant's conduct amounted to the offenses of indecent exposure and indecent assault, as defined by the Crimes Code. (*See id.* at 3-4). Appellant does not challenge this conclusion on appeal.

> When I moved … [Appellant] parked behind me. And when I moved, like I said I was on the phone with my mom, I was crying. I looked in the rearview mirror and there was a white truck behind me. At that point, I was hyperventilating and crying. I was waiting for [my attorney] because I was afraid to walk in by myself.

(N.T. Hearing, 12/16/24, at 63).

The court evaluated this evidence and credited the testimony of Appellee and her witnesses. (**See** Trial Court Opinion at 4). Specifically, the court found that Appellee's evidence supported a conclusion that Appellee remains at a continued risk of harm from Appellant. (**Id.** at 6). Our review of the record confirms the court's findings. Here, the record established that Appellant sexually victimized Appellee in the past. Importantly, Appellant also acted as a complainant in an ongoing criminal matter against Appellee, and Appellant opted to place himself in Appellee's presence when she appeared at court to face these charges.

Under the plain language of the Act, this evidence proved that Appellant posed a continued risk of harm to Appellee. **See A.M.D., supra** (holding preponderance of evidence demonstrated that appellant posed continued risk of harm to victim; proximity of appellant's home to victim's home ensured that parties would continue to cross paths); **E.A.M., supra** (explaining that victim established continued risk of harm through testimony indicating that appellant, her former classmate, continued to appear on campus and at school events after he was no longer enrolled; appellant's presence at school, and administration's decision to endorse it, caused apprehension, fear, and

emotional distress to victim). Thus, we cannot agree with Appellant's argument that the trial court somehow misinterpreted the Act in granting Appellee's request for a PFI order. ***See A.M.D., supra***. Accordingly, we affirm the PFI order entered in Appellee's favor.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/19/2025