2024 PA Super 228

| AMBER G. HEIDEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN P. FOWLER | : | |
| | : | |
| Appellant | : | No. 1587 MDA 2023 |

Appeal from the Order Entered October 25, 2023
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s):  2023-00908

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED OCTOBER 01, 2024**

Defendant/Appellant Sean P. Fowler appeals from the order entered in the Court of Common Pleas of Huntingdon County granting Plaintiff/Appellee Amber G. Heidel's petition for a Sexual Violence Protective Order ("SVPO") against Mr. Fowler under the Protection of Victims of Sexual Violence or Intimidation Act ("PVSVIA").[1,2]  Mr. Fowler asks whether the trial court erred

---

[*] Former Justice specially assigned to the Superior Court.

[1]  **See** 42 Pa.C.S. §§ 62A01-62A20.

[2]  In **K.N.B. v. M.D.**, 259 A.3d 341 (Pa. 2021), our Supreme Court acknowledged:

> The General Assembly enacted the PVSVIA in 2014 to give victims of sexual violence "safety and protection from further interactions with their offender, regardless of whether they seek criminal prosecution."  42 Pa.C.S. § 62A02(5).  The law allows victims of sexual violence who would not be able to obtain a Protection From Abuse Order[] to seek an SVPO prohibiting their abusers from contacting them, under penalty of arrest.  **Id.** §§ 62A07(b)(1), 62A12.

*(Footnote Continued Next Page)*

when it found that Ms. Heidel introduced sufficient facts to support her assertion that he committed "sexual violence" upon her and posed a continued risk of harm towards her for purposes of the PVSVIA. We affirm.

The alleged events in question occurred while Mr. Fowler and Ms. Heidel were on duty as corrections officers working for the Pennsylvania Department of Corrections at SCI-Huntingdon. On August 17, 2023, Ms. Heidel sought an SVPO through her filing of a PVSVIA petition in which she asserted that Mr. Fowler committed the following acts against her:

> October 2022, Fowler, [Corrections Officer] Hughes, and I were in the lounge area where we eat. Fowler was questioning me about my arm (I had an injury and surgery)—Questions like: Are you rubbing your arm? Is your Husband massaging your arm? Fowler would frequently nag me about wanting to touch my arm. I said no, it's uncomfortable, I don't want my arm touched. He said give me your arm, I'll do it. I said NO and I pulled my arm to my body. He reached across the table and he was prying my arm away from my body to rub it, he got a hold of it and was rubbing it. I told him to let go and did succeed in getting my arm away from him. There was another incident where I had to hide my arm from him. He frequently tried to touch my arm.
>
> Mid-end of October he told me that he had his son show him my pictures on Facebook. He was moaning sexually.
>
> On November 11, 2022, he kept saying that he had something to tell me and he wanted me to go into his office. I would not and he followed me during checks and said we are soulmates. We belong together, we were wolves in a past life and we must have been alphas together or something. He grew angry at my disinterest. When we left the mods (modular buildings), we went into the institution by a trash can. The trash can is about 5 ft.

_____

**_K.N.B._** at 344.

tall, made of metal, and has a shoot, it is not light. He threw/pushed it into me, on purpose, and the trash can knocked into me so hard that it sent me off balance. I stumbled almost to the ground and it left a large bruise on my hand. I reported the incident and was told that there would be an investigation by the facility. It was eventually unsubstantiated (end of May—beginning of June). I went to the Pennsylvania State Police and reported the incident. Charges were filed and he was found guilty on July 31st of the 2 counts of Harassment – Subject Other to Physical Contact.

He has told multiple people at work that my husband abuses me and my kids and this is not true. He has tried to get others at work to report my husband to the police for these false accusations.

He has made comments that my work pants make me look curvy, he has pulled his bid for another shift and told me that it was to continue working with me. He has told me that he loved me since the first time he saw my eyes on the tier at work. Also in October, he would tell me that if I yelled, it excited him, my giggle excites him, and he never felt this way about anyone, including his wife. He would express agitation and negativity any time I mentioned receiving assistance in my life, especially if it was from a male. I would be going into work and feel like I was walking on eggshells, waiting to see what sexual harassment would be coming next.

PVSVIA Petition, 8/17/23, at ¶ 6.

Upon receipt of Ms. Heidel's petition, the trial court entered a temporary SVPO and scheduled an evidentiary hearing for August 23, 2023, to determine whether a final order was warranted. At the hearing, Ms. Heidel amplified her written assertions by testifying how, on one occasion in October of 2022, Mr. Fowler ignored her standing request that he respect her status as a married woman and refrain from touching her when he "grabbed hold of [her] anyway" consistent with his oft-repeated declarations of "love for [her]." N.T., 8/23/23, at 3. On cross-examination, she confirmed she was referring to the incident reported in the petition where Mr. Fowler grabbed her injured arm to

- 3 -

massage it. N.T. at 5. Ms. Heidel also testified to a separate fall of 2022 workplace incident of uninvited, forcible intimate contact where Mr. Fowler allegedly "insisted that [she] needed a hug and grabbed hold of [her] and hugged [her]" N.T. at 2, 5.

Sitting as finder of fact, the trial court found Ms. Heidel credibly and sufficiently asserted through her petition and testimony that she experienced two episodes of "sexual violence" under the PVSVIA, once when Mr. Fowler forcibly grabbed her arm and massaged it, and once when he forcibly hugged her. This timely appeal followed.

In both his court-ordered Pa.R.A.P. 1925(b) concise statement and his advocate's brief, Appellant raises the following issues for our consideration:

1. Did the Plaintiff assert she was a victim of "sexual violence" or "intimidation" as those words are defined in 42 Pa.C.S.A. § 62A03?

2. Did the Plaintiff prove, by a preponderance of the evidence that she is at continued risk of harm from the Defendant?

Defendant/Appellant's Pa.R.A.P. 1925(b) Concise Statement, 12/12/23.

We review a challenge to the grant of an SVPO using the same standards applicable to Protection from Abuse Act orders: we assess the order for an abuse of discretion or error of law. *C.J.B. obo R.N. v. S.W.*, unpublished memorandum at 307 A.3d 644 **2 (Pa. Super. filed October 10, 2023) (citing *E.A.M. v. A.M.D.*, 173 A.3d 313, 316 (Pa. Super. 2017)).[3] An abuse of

---

[3] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

discretion is not merely an error in judgment, but an overriding or misapplication of the law, or a judgment that is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. *E.A.M.*, *supra*.

This Court has further observed:

> To demonstrate the right to an SVPO, a plaintiff must: "(1) assert that the plaintiff or another individual ... is a victim of sexual violence *or* intimidation committed by the defendant; and (2) prove by [a] preponderance of the evidence that the plaintiff or another individual ... is at a continued risk of harm from the defendant." 42 Pa.C.S.A. § 62A06(a)(1)-(2) (emphasis added). To satisfy her burden of proof on the first element, a plaintiff need only make an assertion that the defendant committed an act of sexual violence which the trial court finds credible. *See E.A.M.*, 173 A.3d at 319.
>
> As defined by the Act, "sexual violence" includes the sexual offenses enumerated in Chapter 31 of the Pennsylvania Crimes Code (except sexual intercourse with animal). *See* 42 Pa.C.S.A. § 62A03. The sexual offenses listed in Chapter 31 include the offense of indecent assault. *See* 18 Pa.C.S.A. § 3126(a)(1). Thus, indecent assault constitutes "sexual violence" for purposes of the Act. *See* 42 Pa.C.S.A. §§ 62A06(a)(1); 62A03. A person commits indecent assault when he touches a sexual or intimate part of the body without consent for the purposes of gratifying sexual desire. *See Commonwealth v. Gamby*, 283 A.3d 298, 318 (Pa. 2022). [4]

_____

[4] Section 3126 of the Crimes Code defines indecent assault without consent as follows:

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with

*(Footnote Continued Next Page)*

**C.J.B.**, 307 A.3d 644 at \*\*3 (internal footnotes omitted).

The first issue raised by Mr. Fowler is that Ms. Heidel failed to assert that she was the victim of "sexual violence" as defined by the PVSVIA. He argues that even assuming the credibility of her assertion that he grabbed and rubbed her arm in one instance and hugged her in another, neither act qualified as sexual violence where a sexual or intimate part of the body was not involved. Because we find no error with the trial court's conclusions that both acts involved an intimate body part of Ms. Heidel, we deem Appellant's argument meritless.

In the case *sub judice*, the trial court applied the above-described rubric of the PVSVIA and determined that Mr. Fowler's touching of Ms. Heidel constituted "indecent contact" as proscribed under the crime of indecent assault at 18 Pa.C.S.A. § 3126(a)(1) because each instance involved the non-consensual touching of an intimate part of her body.

In making this finding, the trial court was guided by the recent Pennsylvania Supreme Court decision in **Gamby**, which involved the defendant's nonconsensual kiss of the back of the victim's neck. Deeming the

---

seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

> (1) the person does so without the complainant's consent.

18 Pa.C.S. § 3126(a)(1). "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

neck an intimate body part, our Supreme Court held that for purposes of indecent assault "sexual or other intimate parts" is not limited to only sexual body parts, but includes "a body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and on which is commonly associated with sexual relations or intimacy." *Id*., 283 A.3d at 313-14.[5]

---

[5] With respect to what constitutes "intimate parts," the **Gamby** Court recognized that because the phrase was a component of the phrase "sexual or other intimate parts of the person," it found that "intimate parts"

> are clearly more than "sexual parts," and so cannot solely relate to the genitalia, as such a construction would ignore the manifest distinction between "sexual" and "other intimate parts," and would make the latter term superfluous. By including the words "or other," the legislature made clear that "sexual" is a subset of the category of "intimate parts" – that is, "intimate" is broader than "sexual." Therefore, we reject Appellant's suggestion that "intimate parts" can be cabined solely to the sexual body parts, as the statute, by its very terms, is more broadly applicable. Conversely, we also reject the Commonwealth's suggestion that the phrase "sexual or other intimate parts" constitutes *any* body part, as the qualifiers "sexual" and "intimate" plainly narrow the focus. In that regard, the statute's reference to sexual and other intimate parts refers to areas of the person that implicate sexual autonomy, rather than offensive touch generally, which would be the subject of a mere battery.

*Id*. at 308 (emphasis in original).

The **Gamby** Court also looked to the Model Penal Code (MPC) for guidance on what qualifies as "intimate" under the Indecent Assault statute, but it found the MPC focused on distinguishing mere familial contacts or affections from sexual contacts and, thus, provided more guidance on the *nature* of the contact rather than on what body parts would qualify as "intimate" under criminal statute. **See Commonwealth v. Haahs**, 2809 A.3d 100, 105-106 (Pa. Super. 2022) (discussing **Gamby**).

Applying **Gamby** to the present case, the trial court first addressed the assertion of sexual violence committed during the prying and massaging of Ms. Heidel's arm against her will. The trial court noted that, "[a]dmittedly, there is a weakness in the evidence presented here in that [Ms. Heidel] did not specifically state, either at the hearing or in the petition, what specific part of her arm that [Mr. Fowler] grabbed and began rubbing." TCO at 7.

Nevertheless, the trial court found that the reasonable implication from evidence that Mr. Fowler pried Ms. Heidel's arm away from her torso and began to rub it was that his hands must have encircled the inner, upper arm she was keeping close to her torso and chest. This body part, the trial court observed, is one that is not touched, embraced, rubbed, or "massaged"—to use Mr. Fowler's word—by others in ordinary social interactions absent the possibility of an acceptable context such as emergency assistance or athletics, and is, instead, typically reserved to those engaged in consensual close, personal, intimate relationships. TCO at 7.

We find no error in the trial court's application of **Gamby** in making its the determination that an adult does not usually embrace or rub the inner, upper arm of another outside of personal or intimate relationships.

The same analysis and conclusion attend the trial court's determination that a separate assertion of sexual violence occurred in the accusation that Mr. Fowler overrode Ms. Heidel's expressed wishes and forced a hug on her. In the trial court's assessment of this assertion, it reasoned, "Given [Mr. Fowler's] overtly sexual pursuit of [Ms. Heidel], it is a near certainty that the

forced hug was an attempt on [Mr. Fowler's] part to obtain as much physical contact between his torso and the sexual and other intimate parts of [Ms. Heidel's] torso (breasts and stomach)[1]."[6]  TCO at 8.

As finder of fact at the hearing below, the trial court made the reasonable inference from Ms. Heidel's testimony that Mr. Fowler's unwelcome hug, preceded by a brief conversation between the two, was a typical face-to-face hug, where he pressed the front of his body against the front her body while his hands were placed on her back.  The court determined that Mr. Fowler's touching of Ms. Heidel thus implicitly involved intimate areas of her body, with his torso touching her breasts and abdomen, his hands upon her back without maintaining any space between them.  This was a reasonable inference made from Ms. Heidel's assertion offered in her testimony seeking a SVO protective order.

Finally, when viewed against the backdrop of Ms. Heidel's credible assertion of the many unrequited sexual overtures and comments Mr. Fowler made to her in the workplace, along with the uncontested testimony of his violent attack against her after she rebuffed him one last time, the two acts of intimate physical touching were properly understood by the trial court as having been initiated for the purpose of arousing or gratifying his own sexual

---

[6] On this point, the trial court cited **Commonwealth v. Capo**, 727 A.2d 1126, 1127-28 (Pa. Super. 1999), which held that shoulders, back, and stomach come under the terms "sexual and other intimate parts" of the body for purposes of indecent assault.

desire.[7]  Accordingly, we discern no error with the trial court's findings of fact and conclusions of law in ruling that Ms. Heidel asserted two instances of PVSVIA sexual violence committed against her by Mr. Fowler.[8]

In Mr. Fowler's remaining issue, he argues that Ms. Heidel failed to prove, by a preponderance of the evidence, that she is at continued risk of harm from him.  He bases this argument on the lack of evidence that Ms. Heidel and he both continue to work at SCI-Huntingdon or that he would be a "repeated presence" in her life so as to cause her apprehension, fear, and emotional distress.  *See* Brief for Appellant, at 29-30.

With this argument, Mr. Fowler essentially argues that Ms. Heidel has failed to present a reasonable basis for fearing that he intends to harm her in the future, because she is currently on leave from work and there is no proof they will encounter one another at work in the future.[9]  We disagree, as

---

[7] Appellant offers no specific argument against the trial court's determination that Appellant committed the acts in question to arouse or gratify his own sexual desire, presumably because he contests the categorization of such acts as sexual or intimate in the first instance.

[8] Ms. Heidel's written petition supplied ample assertions of Mr. Fowler's persistent sexual overtures towards her to support the reasonable conclusion that Appellant engaged in these actions for his own sexual gratification or arousal.

[9] We note the trial court properly considered that the reason Ms. Heidel was on leave from work was because she feared for her life after his physical attack of her and his purported statements to co-workers implying he intended to harm her further.  While the court explained it disregarded the substance of hearsay statements made by co-workers, it considered them admissible to the degree they revealed a source of Ms. Heidel's fear of encountering Mr. Fowler again.

sufficient record evidence of Mr. Fowler's fixation with Ms. Heidel coupled with his recent record of criminal charges of violent crimes allegedly committed against other co-workers in the wake of his attack on Ms. Heidel sufficed to establish that Ms. Heidel was at continued risk of harm.[10]  In this regard, the trial court's observations are most apt:

> Taken as a whole, the evidence in the record establishes that [Mr. Fowler] is sexually and romantically obsessed with [Ms. Heidel], has a history of attempting to force her to bend to his will, has physically assaulted her in anger for not acquiescing to his advances, and has lashed out toward others involved in the situation when it has not gone his way in a manner that has left many people concerned about how far he might go and what he might do next.  That is sufficient to establish, by a preponderance of the evidence, that [Ms. Heidel] is at continued risk of harm from [Mr. Fowler].  To hold otherwise would ignore the reality of the situation.

TCO, at 10.

For the foregoing reasons, we affirm.

Order Affirmed.

---

[10] To the extent Mr. Fowler's argument may be read to imply that Ms. Heidel's fear of encountering him is unreasonable during her present leave of absence, we observe that in *K.N.B.* the Pennsylvania Supreme Court clearly rejected such "invitation[s] to read into the PVSVIA a requirement that a plaintiff's fear of encountering the defendant must be objectively reasonable under the circumstances. . . .  [T]here is simply no textual support for the conclusion that a PVSVIA plaintiff's fear of harm must be analyzed using an objective, reasonable-person standard." *Id.* at 351.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/01/2024