J-A24036-25          2026 PA Super 23

| | | |
|---|---|---|
| A.M.L. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.R. | : | |
| | : | |
| Appellant | : | No. 1585 MDA 2024 |

Appeal from the Order Entered September 23, 2024
In the Court of Common Pleas of Centre County Civil Division at No(s):
2024-CV-1160-CI

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

OPINION BY KUNSELMAN, J.:                    **FILED FEBRUARY 06, 2026**

J.R.[1] appeals from the final sexual violence protective order (SVPO) entered by the Centre County Court of Common Pleas, pursuant to the Protection of Victims of Sexual Violence or Intimidation Act (PVSVIA), in favor of A.M.L.  We must determine if the facts are sufficient to support the issuance of an SVPO, where the parties live on opposite sides of the country, had one encounter in State College, Pennsylvania, and the victim now fears running into the perpetrator in Philadelphia.  After careful review, we determine that these facts are insufficient to warrant an SVPO.  Thus, we reverse.

The trial court provided the following factual history in its opinion:

> A.M.L. is a New Jersey resident who was in State College,
> Pennsylvania over the weekend of April 20-21, 2024.  A.M.L.

---

[1] We have elected to refer to the parties by their initials to preserve their anonymity and in accordance with how this Court and our Supreme Court referred to the parties in the **K.N.B. v. M.D.** case.  **See K.N.B. v. M.D.**, 259 A.3d 341 (Pa. 2021).

met J.R. in the early morning hours of April 21, 2024 at the bar "Champs". A.M.L. and J.R. spent time together at the bar, contemplated having sex at the bar, and then got into an argument outside the bar. They exchanged text messages following their argument and made plans to see each other later that day.

A.M.L. and J.R. did meet again later that day at J.R.'s hotel room and began having consensual sex. During the intercourse, A.M.L. withdrew consent and J.R. proceeded to ejaculate. A.M.L. began to cry and told J.R. that she had never been treated that way. A.M.L. and J.R. left the hotel room, and J.R. returned to California, where he lives. Aside from text messages and a phone call initiated by A.M.L. on April 22, 2024,[2] the parties have had no further interaction with each other.

Trial Court Opinion (T.C.O.), 9/23/24, at 1-2 (plaintiff's and defendant's initials added).

After the April 21, 2024 incident, A.M.L. filed a petition for an SVPO. The trial court held a hearing four months later, on August 28, 2024, during which A.M.L. testified and J.R. did not. As the trial court explained:

Neither party lives, works, or goes to school in Pennsylvania. They do not have any mutual friends and are not connected on social media. The parties have not seen each other since the incident on April 21, 2024, except for in court for the hearing on the SVPO [petition]. A.M.L. testified extensively about her anxiety and fear of running

_____

[2] The trial court stated there was a phone call on April 22, 2024, but the record indicates a phone call never occurred between the parties that day. A.M.L. testified that she texted J.R. twice that day, while talking to the police, because they wanted her to talk to him. *See* N.T., 8/28/24, at 23-25. Her second text message told J.R. that she wanted to talk to him on the phone. *See id.* at 24. From the text messages entered into evidence at the hearing, we see that J.R. responded approximately two hours later and stated that he had tried calling her. *See* Exhibit D1. From this exchange, it appears that although both parties may have called each other, they never actually talked on the phone that day.

- 2 -

into J.R. in the greater Philadelphia area because she visits her boyfriend who lives in Allentown, Pennsylvania and she occasionally goes to Philadelphia. A.M.L. testified J.R. has family in southeastern Pennsylvania and that he planned to visit them in the weeks following the April 21, 2024 incident.

*Id.* at 2 (plaintiff's and defendant's initials added).

After the hearing, the court deferred judgment and entered an order requiring the parties to submit briefs "with their respective positions, based on the statute, [about] whether the testimony provided is sufficient to determine that A.M.L. shall be under continued risk of interaction or assault from J.R." Trial Court Order, 9/4/24 (plaintiff's and defendant's initials added). The court ultimately granted A.M.L. a three-year final SVPO.

J.R. timely appealed. He presents the following issue for our review:

1. Whether the trial court erred in granting a final Sexual Violence Protection Order as A.M.L. failed to establish by a preponderance of the evidence that she is more likely than not at risk of future encounters with J.R. which is specifically contemplated by the legislative purpose of the Act and controlling case law?

J.R.'s Brief at 4 (numbering and plaintiff's and defendant's initials added).

"We review a challenge to the grant of an SVPO using the same standards applicable to Protection from Abuse Act orders: we assess the order for an abuse of discretion or error of law." *Heidel v. Fowler*, 325 A.3d 816, 820 (Pa. Super. 2024) (citation and footnote omitted). "An abuse of discretion is not merely an error in judgment, but an overriding or misapplication of the law, or a judgment that is manifestly unreasonable, or the result of partiality,

- 3 -

prejudice, bias, or ill-will, as shown by the evidence of record." ***Id.*** (citation omitted).

To the extent J.R.'s issue requires us to engage in statutory interpretation, or to otherwise decide a question of law, our standard of review is *de novo*, and our scope of review is plenary. ***See In re Adoption of B.G.S.***, 245 A.3d 700, 704 (Pa. Super. 2021) (citation omitted); ***K.N.B. v. M.D.***, 259 A.3d 341, 347 (Pa. 2021) (explaining that both issues related to the PVSVIA were pure questions of law, which the Court reviewed *de novo*) (citation omitted).

"The General Assembly enacted the PVSVIA in 2014 to give victims of sexual violence 'safety and protection from further interactions with their offender, regardless of whether they seek criminal prosecution.'" ***K.N.B.***, 259 A.3d at 344 (citing 42 Pa.C.S. § 62A02(5)). The PVSVIA provides victims of sexual violence with a civil remedy requiring the offender to stay away from them, as well as other appropriate relief. ***See*** 42 Pa.C.S.A. § 62A02(6). Victims of sexual violence can "seek [an] SVPO prohibiting their abusers from contacting them, under penalty of arrest."[3] ***K.N.B.***, 259 A.3d at 344 (citing 42 Pa.C.S. §§ 62A07(b)(1), 62A12).

---

[3] The PVSVIA provides an alternative to victims of sexual violence who would not be able to obtain a Protection From Abuse (PFA) order because the acts complained of do not qualify under the PFA Act's definition of "abuse" because the parties lacked a qualifying pre-existing relationship. ***See*** 23 Pa.C.S.A. § 6102(a) (defining "abuse," in relevant part, as the "occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood").

To be granted an SVPO under the PVSVIA, a plaintiff must:

(1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S.A. § 62A06(a). The preponderance of the evidence standard is "a more likely than not inquiry, supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision." *E.A.M. v. A.M.D. III*, 173 A.3d 313, 320 (Pa. Super. 2017) (citation omitted).

On appeal, J.R. solely argues that A.M.L. failed to prove the second prong of the PVSVIA. He makes no argument, related to the first prong, that A.M.L. did not assert that she was a victim of sexual violence committed by J.R. Thus, we likewise focus our analysis on the second prong—whether A.M.L. proved, by a preponderance of the evidence, that she is at a continued risk of harm from J.R. *See* 42 Pa.C.S.A. § 62A06(a).

Specifically, J.R. correctly acknowledges that our Supreme Court evaluated this prong in *K.N.B., supra*, and held that it "does not require trial courts to evaluate the reasonableness of the plaintiff's mental and emotional reaction when she encounters the defendant." J.R.'s Brief at 13 (citing *K.N.B., supra*) (emphasis omitted). However, J.R. argues that although the Supreme Court noted the requirement of a future encounter, neither it nor any other

- 5 -

court "has specifically addressed the issue of what exactly this requirement of a future encounter actually entails." *Id.* J.R. asserts that all the existing case law deals with two individuals who had continuing interactions or whose daily routines or habits led to future interactions, which is not the case here. *See id.* Although J.R. concedes that a court does not need to evaluate the reasonableness of a plaintiff's reaction during an encounter, he claims "the court must evaluate the reasonableness or probability of an encounter occurring." *Id.* at 14. J.R. argues that the "case law is clear that a plaintiff must establish a defendant can cause continuing harm during a subsequent encounter." *Id.* (citations and emphasis omitted). Thus, J.R. asserts that a plaintiff must show, by a preponderance of the evidence, "that there is the probability or likelihood of a future encounter with [the] person from whom protection is sought." *Id.* at 15.

Here, he argues A.M.L. "has failed to prove any possibility or even likelihood of some future encounter which could lead to continuing harm." *Id.* at 17. J.R. and A.M.L. had only one encounter which was a "one-night stand," and they have had no encounters or communication since. *See id.* Additionally, given the population of the suburban Philadelphia area and the distance between the parties, "the feasibility of them randomly running into each other at some chance point in the future is incalculable." *Id.* at 18-19. Therefore, he states A.M.L. did not meet her burden of proof. *Id.* at 19.

Conversely, A.M.L. argues that the trial court's analysis correctly rejected J.R.'s "invitation to impose additional requirements into the

'continued risk of harm' prong." A.M.L.'s Brief at 12 (citation omitted). She asserts the decision follows precedents holding that the inquiry for an SVPO is the petitioner's subjective fear and wish to avoid future contact. *See id.* (citation omitted). A.M.L. asserts that her burden was to prove a continued risk of harm that any future interaction with J.R. would cause her apprehension, fear, and emotional distress, not that she would have future interactions with J.R. *See id.* at 15 (citation omitted). A.M.L. argues that J.R.'s focus on interactions rather than harm is misguided. *Id.* at 18. Requiring that a plaintiff prove that she will encounter the defendant in the future would add an additional element to the statute that is not currently required under its plain language. *Id.* at 18-19.

A.M.L. also acknowledges our Supreme Court's decision in *K.N.B., supra*, but argues that it supports her position. She claims the High Court's holding did not turn on whether the plaintiff proved that future interactions would occur, but instead focused on the plaintiff's fear of harm. *See id.* at 16. Thus, J.R.'s "attempts to make continued harm hinge on a probability assessment of continued interaction would improperly impose another 'objective reasonability' litmus test on the victim's fear and apprehension," which runs afoul of the High Court's decision in *K.N.B. See id.* at 20.

For its part, the trial court reasoned as follows:

> The court notes that the PVSVIA does not define "continued risk of harm from the defendant." The Pennsylvania Supreme Court addressed the "continued risk of harm" element in *K.N.B. v. M.D.*, 259 A.3d 341 (Pa. 2021), holding that a trial court does not have to address the reasonableness of a victim's

- 7 -

> fear or anxiety when he or she encounters the perpetrator. **K.N.B. v. M.D.**, 259 A.3d 341, 351 (Pa. 2021). In **K.N.B.**, the Pennsylvania Supreme Court explicitly stated that "there is simply no textual support for the conclusion that a PVSVIA plaintiff's fear of harm must be analyzed using an objective, reasonable-person standard." **Id.**
>
> J.R. attempts to distinguish the ruling in **K.N.B.** by arguing that A.M.L.'s fear of an encounter even occurring must be reasonable. No such requirement exists in the statute or the Pennsylvania Supreme Court's decision in **K.N.B.**, and the trial court is not empowered to create one. As a result, the trial court finds that A.M.L. has established that she is a victim of sexual violence by J.R. and that she is at a continued risk of harm by J.R. [. . . .]

T.C.O. at 2-3 (cleaned up and plaintiff's and defendant's initials added).

Although, notably, there is scant case law concerning the PVSVIA, both parties and the trial court rely on our Supreme Court's decision in **K.N.B., supra**. The facts and arguments in that case substantially differ from those here. K.N.B. was a college freshman in 2015. **K.N.B.**, 259 A.3d at 344. That year, she claimed that M.D., a fellow student at the same college, sexually assaulted her. **Id.** Initially, she did not report the assault to the police. **Id.** In early 2018, after seeing M.D. at a Walmart, K.N.B. suffered a panic attack. **Id.** at 344-45. She then reported the 2015 assault to the university's police department, although she was no longer a student at the university. **Id.** at 344. She also petitioned the trial court for an SVPO. **Id.**

At the hearing on her SVPO petition, K.N.B. testified about the 2015 assault. **Id.** at 345. On the day after the assault, K.N.B. and M.D. agreed to see each other again, during which she started to have sex with him but then "lost it." **Id.** (citation omitted). She further testified that M.D. sent her a

Facebook message in May 2016. *Id.* (citation omitted). They occasionally attended the same parties, and M.D. approached her at a party in November 2016, "cracked a joke," and tried to fist bump her. *Id.* (citation omitted). K.N.B. would also see M.D. on campus sometimes, and she once saw him walking his dog by her house. *Id.* She testified that those post-assault encounters triggered panic attacks, and she was diagnosed with post-traumatic stress disorder. *Id.* (citation omitted).

After a hearing, the trial court granted K.N.B. a final SVPO. *Id.* M.D. appealed to this Court, and we affirmed. M.D. then appealed to the Supreme Court. The High Court granted allowance of appeal to determine, in part, "whether the continued risk of harm element can be demonstrated based solely on the victim's subjective fear of harm." *Id.* at 347.

M.D. did not "dispute that the fear and trauma associated with a plaintiff publicly encountering her assailant might constitute a continued risk of harm," but he argued that "trial courts must consider not only the plaintiff's fear, but also whether the defendant actually intends to harm the plaintiff." *Id.* at 350 (citation omitted).

The Supreme Court disagreed with M.D. It determined that contrary "to M.D.'s suggestion, nothing in the text of the PVSVIA indicates that the statute's second prong rises or falls depending upon whether the defendant intends to harm the plaintiff." *Id.* The Supreme Court explained that:

> [T]he trial court found that K.N.B. risks ongoing harm from M.D. given that his very presence triggers K.N.B.'s panic attacks. The court also noted that K.N.B. suffers from PTSD

from the assault and is in therapy as a result. Logically, then, whether or not M.D. subjectively intends to harm K.N.B. is irrelevant under the statute because she risks ongoing harm regardless of his intent.

[. . .]

Unlike the Concurring and Dissenting Opinion, we decline M.D.'s invitation to read into the PVSVIA a requirement that a plaintiff's fear of encountering the defendant must be objectively reasonable under the circumstances. [. . .] And there is simply no textual support for the conclusion that a PVSVIA plaintiff's fear of harm must be analyzed using an objective, reasonable-person standard.

Furthermore, even if the PVSVIA were somehow ambiguous regarding whether a plaintiff's subjective fear alone can constitute a continued risk of harm, we would still reject M.D.'s argument that the statute turns on whether the defendant intends to harm or intimidate the plaintiff. The PVSVIA exists specifically to protect victims of sexual abuse from future interactions with their assailants, which is why the General Assembly explicitly stated in the law's "findings and purpose" section that "[v]ictims of sexual violence and intimidation desire safety and protection ***from future interactions with their offender***, regardless of whether they seek criminal prosecution." 42 Pa.C.S. § 62A02(5) (emphasis added). There is absolutely no indication, implicit or explicit, that the General Assembly intended for the issuance of protective orders to depend upon whether the defendant intends to harm the plaintiff.

[. . . .] We also hold that the PVSVIA's continued risk of harm element does not require trial courts to evaluate the reasonableness of the plaintiff's mental and emotional reaction when she encounters the defendant.

*Id.* at 350-52 (footnotes and some citations omitted) (some emphasis in original).

M.D. argued that K.N.B.'s fear was unreasonable because she could not prove he intended to harm her. Thus, she could not establish the need for an SVPO. The High Court disagreed and granted K.N.B. relief.

Here, J.R. assumes A.M.L. has a subjective fear of him, but she did not prove a continued risk of harm, due to the unlikelihood they will ever encounter one another again. We agree. The trial court has the discretion to decide on an objective basis whether the risk of harm "continues" and may accept or reject the complainant's subjective belief regarding this element.

Unlike the parties in **K.N.B.**, who attended the same college where they repeatedly encountered each other, A.M.L. and J.R. were strangers who happened to be at Penn State for the same weekend. They had one interaction, where A.M.L. asserted that she was the victim of sexual violence.

In **K.N.B.** the parties saw each other multiple times after the assault, however, here, A.M.L. and J.R.'s only subsequent interaction was two text messages sent by A.M.L. at the request of the police, and a response from J.R. **See** N.T., 8/28/24, at 23-25; Exhibit D1. A.M.L. testified that she had no further communication with J.R. after she talked to the police, and he did not attempt to communicate with her. N.T. at 23-25. Neither A.M.L. nor J.R. live in Pennsylvania; she lives in New Jersey, and he lives in California. **Id.** at 9, 11, 28, 42-45; T.C.O. at 1-2. The parties met at Penn State, in State College, Pennsylvania. But A.M.L. testified that she has no connections to Penn State other than visiting friends—she does not work or go to school there. N.T. at 26-27. She also does not have any friends, work, or school in

common with J.R. *Id.* at 45. They did not follow each other on social media, and, in fact, A.M.L. blocked J.R. on social media. *Id.* A.M.L. did not know J.R.'s address in California. *Id.* She stated that she had cousins who lived in California, but she last visited them four years ago. *See id.* She provided no further information on where they lived nor any evidence that they lived near J.R. *See id.*

Although the incident giving rise to the SVPO petition occurred at Penn State, A.M.L. did not testify that she was afraid of encountering J.R. in State College. Instead, she testified that she was afraid of randomly running into J.R. in Philadelphia, because he has family in the suburban Philadelphia area, specifically Lansdale, Montgomery County, and her boyfriend's home is in Allentown, Lehigh County, which are both "relatively close" to Philadelphia. *See id.* at 25-26, 43-44. During their initial encounter, J.R. had talked to A.M.L. about returning to Pennsylvania in two weeks to visit his family. *See id.* at 13; Exhibit D1. A.M.L. testified that she goes to Philadelphia with her friends. N.T. at 44. A.M.L. presented no evidence that J.R. initiated any other contact with her after the initial incident.

Thus, the parties live on opposite sides of the country, have no mutual friends, do not work or attend school together, are not connected on social media, and had no contact after the initial incident. The only place where A.M.L. fears she could encounter J.R. is in Philadelphia. The legislature did not design the PVSVIA to protect against this scenario. Instead, the statute

was intended to give petitioners peace of mind from ongoing interactions with their assailants.

Indeed, other cases where an SVPO or protection from intimidation order was upheld all involved plaintiffs and defendants who lived near each other or saw one another on a continued basis at work, school, or in their neighborhood. Therefore, this Court has recognized that evidence of a defendant's continued presence where the victim is located may inform a finding of whether the plaintiff subjectively believes he or she is at a continued risk of harm.

For example, in **A.M.D. on Behalf of A.D. v. T.A.B.**, 178 A.3d 889 (Pa. Super. 2018), the trial court held a preponderance of the evidence demonstrated that appellant posed a continued risk of harm to the victim. **A.M.D.**, 178 A.3d at 895 (citation omitted). The court noted that the victim's mother proved five instances of harm committed by appellant, and the proximity of appellant's home to the victim's home ensured that the parties would continue to cross paths because they were neighbors. **See id.** (citation omitted). This Court affirmed the trial court's decision, noting that the record supported the trial court's conclusion that the victim was at a continued risk of harm. **Id.**

Also, in **E.A.M., supra**, the victim established a continued risk of harm through testimony indicating that appellant, who was her former classmate, continued to appear on campus and at school events after he was no longer enrolled. **E.A.M.**, 173 A.3d at 320-21. The appellant's presence at her school,

and the administration's decision to allow his presence there, caused her apprehension, fear, and emotional distress. *Id.* at 321. Thus, the evidence sustained the trial court's finding that appellant's recurrent presence placed the victim at a continued risk of harm by causing her mental or emotional harm or damage. *Id.* (citation omitted).

Finally, in *Heidel, supra* this Court upheld an SVPO against the victim's co-worker, who had a fixation with her. *See Heidel*, 325 A.3d at 823. That, coupled with the appellant's recent record of criminal charges for violent crimes allegedly committed against other co-workers in the wake of his attack on the victim, established that the victim was at a continued risk of harm. *Id.* (footnote omitted). Thus, the appellant's argument, that the victim failed to present a reasonable basis for fearing that he intended to harm her, because she was on leave from work and did not prove they would encounter one another at work in the future, failed. *Id.* (footnote omitted).[4] Unlike those

---

[4] Additionally, this Court has issued non-precedential decisions concerning SVPOs or protection from intimidation orders where the plaintiffs and defendants saw one another on a continued basis. In *Denton v. Delauter*, this Court affirmed a protection from intimidation order and held that the evidence proved that the appellant posed a continued risk of harm to the victim. *Denton v. Delauter*, 2025 WL 2682668 (Table), *4 (Pa. Super. 2025) (non-precedential decision) (citations omitted). The record established that the appellant had sexually victimized the appellee in the past, the appellant acted as a complainant in an ongoing criminal matter against the appellee, and the appellant opted to place himself in the appellee's presence when she appeared at court to face those charges. *See id.* at *3. In *C.J.B. obo R.N.*, the victim's mother appealed from the denial of the SVPO petition she filed on behalf of her daughter. *C.J.B. obo R.N. v. S.W.*, 307 A.3d 644 (Table), 2023 WL 6564933, **1 (Pa. Super. 2023) (non-precedential decision). The victim
*(Footnote Continued Next Page)*

situations, the facts of this case do not support a finding that A.M.L. was at a continued risk of harm from J.R.

Further, the High Court in ***K.N.B.*** noted that the "PVSVIA exists specifically to protect victims of sexual abuse ***from future interactions with their assailants***." ***K.N.B.***, 259 A.3d at 351 (citation omitted) (emphasis added). This is why the General Assembly explicitly stated that victims "'of sexual violence and intimidation desire safety and protection ***from future interactions with their offender***, regardless of whether they seek criminal prosecution.'" ***Id.*** at 351-52 (citation omitted) (some emphasis added). Thus, the ***K.N.B.*** Court recognized that future encounters between the plaintiff and defendant are relevant to the risk-of-harm analysis. In ***K.N.B.***, although M.D. argued that K.N.B.'s fear was unreasonable given that he had not sought her out after sending her a Facebook message in May 2016, he did not dispute that the parties had subsequent encounters after the assault or that there was a likelihood of future interactions.

---

and perpetrator of the assault attended the same high school. ***Id.*** The perpetrator assaulted the victim while the two were returning by bus from an overnight school trip. ***See id.*** The victim testified that it was difficult for her to see the perpetrator in class, she wanted to feel safe at school, and she had concerns because the perpetrator had said he could not control himself around her and the assault had happened while the perpetrator was being supervised by school staff. ***See id.*** at \*\*5-6. This Court explained that it "is clear from current law that the focus is on proof of the victim's subjective feelings of apprehension, fear, and distress; and a defendant's intent is irrelevant to that assessment." ***Id.*** at \*\*6 (citations and emphasis omitted). Thus, we held that the victim's testimony had established the "apprehension, fear and emotional distress" that satisfies the continuing risk of harm element, and the evidence supported the grant of the SVPO. ***Id.*** (citation omitted).

Additionally, our Supreme Court recently decided another case involving an SVPO, **Weatherholtz v. McKelvey**, \_\_\_\_ A.3d \_\_\_\_, 2025 WL 3683086 (Pa. Dec. 16, 2025). There, the issue was when the statute of limitations began to run for filing a petition under the Act. McKelvey sexually abused Weatherholtz in 2009 or 2010 when she was 14 years old. **Weatherholtz**, 2025 WL at *2 (citation omitted). In January 2018, Weatherholtz filed her first petition for an SVPO after she learned that McKelvey attempted to locate her address, contact her through mutual friends, and break up her marriage. **Id.** (citation omitted). The trial court granted her petition and issued a three-year SVPO, which expired in January 2021. **Id.**

In June 2022, Weatherholtz was at a flea market with her family when she encountered McKelvey. **Id.** This prompted her to file a second SVPO petition in August 2022. **Id.** The trial court granted a temporary SVPO. **Id.** McKelvey filed a motion to vacate the temporary SVPO and dismiss Weatherholtz's petition, arguing that the petition was barred by the six-year statute of limitations, which began running at the time of the initial sexual assault in 2009. **Id.** (citation omitted).

The trial court ultimately granted Weatherholtz's petition and entered a final SVPO. **Id.** at *3. This Court reversed the trial court and agreed with McKelvey that the statute of limitations began running at the time of the initial sexual assault in 2009 or 2010. **Id.** at *4 (citation omitted).

The Supreme Court ultimately determined that this Court had erred. Relevant to the instant case, the High Court evaluated the continued risk of harm prong as follows:

> The facts of both **K.N.B.** and **E.A.M.** demonstrate that the continued risk of harm element does not always arise simultaneously with the act of sexual violence or intimidation. [. . . .]
>
> Both **K.N.B.** and **E.A.M.** illustrate that the continued risk of harm element is separate and distinct from the underlying act of sexual violence and intimidation, and that a continued risk of harm may not arise for months or years after the act of sexual violence or intimidation. Likewise, here, Weatherholtz's encounter with McKelvey at the flea market in 2022—which occurred more than a decade after the sexual violence—increased her fear and anxiety, prompting her to seek relief under the Act.
>
> Moreover, because a victim is able [to] prove a continued risk of harm based on the victim's own subjective fear, [. . .] the point at which there is a continued risk of harm is innately tied to the victim's subjective experience and the unique circumstances of the particular case. As a general matter, however, it is clear that a plaintiff has no basis for relief under the Act until the plaintiff is able to prove that he or she is at a continued risk of harm from the defendant. With no continued risk of harm, the action does not accrue, and the statute of limitations does not begin to run. Therefore, we conclude that the six-year statute of limitations for actions brought under the Act begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant, as this is the moment an action accrues.
>
> In reaching this result, we acknowledge that a cause of action typically accrues "when an injury is inflicted." However, the remedy provided by the Act is distinguishable from most civil actions in that it provides prospective relief to protect against future risk of harm, rather than

- 17 -

compensation for past injury. A plaintiff does not need to prove any injury under the Act to be granted a protective order. Thus, the occurrence of sexual violence or intimidation, by itself, does not give rise to relief under the Act. Instead, a plaintiff must prove a continued risk of harm from the defendant to obtain a protective order. While in certain circumstances the continued risk of harm may arise on the same day of the act of sexual violence or intimidation, it is apparent that the element is independent from the injury inflicted by the defendant.

[. . .]

[. . .] [We] do not hold that the Act requires a plaintiff to prove a separate act or circumstance following the underlying sexual violence or intimidation to satisfy the continued risk of harm element. That is a distinct legal question that is not presented in this case. [. . . .]

*Id.* at *10-11 (some emphasis in original) (internal citations omitted).

Thus, although Weatherholtz primarily dealt with a statute of limitations question, our High Court made clear that to be entitled to relief under the Act, a plaintiff must prove that he or she is at a continued risk of harm from the defendant, which is an independent element from the injury inflicted by the defendant. Further, the occurrence of sexual violence or intimidation, by itself, does not afford a plaintiff relief under the Act.

Here, A.M.L.'s testimony focused solely on the one encounter between the parties, and the trauma she has since endured from the memory of that encounter. We accept that A.M.L. may have subjective fear of J.R., understandably stemming from the initial incident. Nevertheless, nothing in A.M.L.'s testimony about her subjective belief provided the trial court with facts from which the trial court could reasonably infer on an objective basis

that J.R. himself posed a continued risk of harming her. The sexual encounter between the parties, by itself, does not afford A.M.L. relief. *See id.* at *10. And A.M.L. provided no evidence that the sexual encounter itself demonstrated that she was at a continued risk of harm from J.R.

Additionally, as noted, the circumstances of this case do not support a finding of a continued risk of harm. The parties live on opposite sides of the country, have no connections, have had no contact since the incident, and A.M.L. blocked J.R. on social media. And, objectively, the parties are not likely to encounter one another on the rare occasion that they may be in the suburban Philadelphia area visiting family and friends at the same time. Put another way, the possibility that A.M.L. and J.R. will encounter each other again is so remote it fails to establish that it is more likely than not that A.M.L. is at a continued risk of harm.

In sum, A.M.L. relies on her subjective belief that she was at a "continued" risk of her encountering J.R. again. This was insufficient. The undisputed facts, using an objective standard, do not establish that it is more likely than not that she is at a continued risk of harm from J.R. Under the facts presented here, we find that the trial court erred as a matter of law by concluding that the evidence established a continued risk of harm. The parties have no connections, live on opposite sides of the country, had one chance encounter in State College, Pennsylvania, and J.R. has not initiated any further communication with A.M.L. We by no means minimize the severity of that initial encounter, nor do we condone J.R.'s actions. Nevertheless, applying

the statute as written and as interpreted by our courts, we conclude A.M.L. failed to meet her burden of proving that she is at a continued risk of harm from J.R. to warrant the imposition of an SVPO.

Order vacated. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/06/2026